No. 24620.

WILLIAM JAMES BRESNAHAN, JR. *v.* THE PEOPLE OF THE STATE OF COLORADO.
(487 P.2d 551)

Decided July 6, 1971. Rehearing denied August 16, 1971.

EDWARD L. WOOD, DONALD P. MACDONALD, R. DALE TOOLEY, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, RICHARD G. MCMANUS, JR., Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

ON August 8, 1964, William James Bresnahan, Jr., age 16 years, was charged with the murders of his father and his mother. Upon initial pleas of not guilty and not guilty by reason of insanity, he was examined by three

doctors pursuant to court order. The three separate doctors' reports each stated that Bresnahan was confused and emotionally disturbed but that he was sane. On November 24, 1964, Bresnahan withdrew his former pleas and entered pleas of guilty to murder in the first degree. Some two months later, on January 27, 1965, Bresnahan was sentenced to life imprisonment for each murder, the sentences to be served concurrently.

On March 24, 1966, Bresnahan filed motions under Crim. P. 35(b) for post-conviction relief alleging that his guilty pleas, as to each murder charge, were not voluntary; that the trial court on its own motion should have held a competency hearing before allowing defendant to plead guilty or to stand trial; and that defendant did not have effective assistance of counsel in entering his guilty pleas. An evidentiary hearing was held during which his trial counsel and several others were examined by defendant's present counsel and cross-examined by the People. The People called no witnesses. The motions were denied by the trial court. By writ of error, Bresnahan urges reversal and requests that the sentences of life imprisonment in each case be vacated; that the convictions on his pleas of guilty be set aside; that his previous pleas of not guilty and not guilty by reason of insanity as to each murder charge be reinstated; and that he be retried. We affirm the trial court's denial of the defendant's Rule 35(b) motions.

## I.

Before considering the merits of defendant's claims, a brief discussion of the burden of proof in a Rule 35(b) proceeding is in order. Defendant claims that since only he presented testimony at the hearing, and since the court denied a dismissal motion by the People upon completion of defendant's presentation of evidence, the trial court was required to grant the defendant the relief he sought. The defendant asserts that the trial court in so ruling did, in effect, make a finding that defendant

had established a prima facie case, which the People did not rebut.

■■■ The purpose of a Rule 35(b) hearing is to take evidence pertinent to allegations, which cannot be disposed of by reference to the trial record alone. Crim. P. 35(b); *Roberts v. People,* 158 Colo. 76, 404 P.2d 848. The burden of proof of the allegations in a Rule 35(b) motion rests with the petitioner. *Lamb v. People,* 174 Colo. 441, 484 P.2d 798; *Normand v. People,* 165 Colo. 509, 513, 440 P.2d 282; American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Post Conviction Remedies, § 4.6(d) and commentary, at 72-78 (Approved Draft 1968). The measure of proof is ordinarily proof by a preponderance of the evidence. *Cf. Sandoval v. Tinsley,* 338 F.2d 48, 50; *State v. Gilbert,* 78 N.M. 437, 432 P.2d 402; Standards Relating to Post Conviction Remedies, *supra,* at 77. Obviously, the trial judge may utilize the complete trial record insofar as possible and pertinent when he rules on a 35(b) motion.

In the instant case, the trial court, upon application of the above stated principles, was bound to determine the issues and make findings of fact and conclusions of law. Crim. P. 35(b). The People's motion to dismiss and its denial can therefore be afforded no effect as to whether defendant met his burden. That question is answered by the findings made by the trial judge. These findings were based upon the trial court's record and the evidence taken at the Rule 35(b) hearing.

■■ We therefore do not agree with the defendant's position that the trial court was required to grant defendant's Rule 35(b) motion because the trial court denied the People's motion for dismissal at the conclusion of the defendant's evidence.

## II.

Defendant contends that his guilty plea was not voluntarily and intelligently entered.

■■■ In considering this contention, we must first consider whether defendant was competent to enter a guilty plea. The fact that defendant was 16 years of age at the time does not affect his competency but it does impose upon the trial court a duty of great care and caution in accepting a guilty plea. *See Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; *United States ex rel. Codarre v. Gilligan*, 363 F.2d 961; *cf. Gallegos v. Colorado*, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325. Furthermore, when the trial court has a doubt as to the mental competence of a defendant under the test set out in C.R.S. 1963, 39-8-6(8)(a), then the court is duty bound upon its own motion to hold a competency hearing on the matter. *Hampton v. Tinsley*, 240 F. Supp. 213 (D. Colo.); *Gantar v. Cox*, 74 N.M. 526, 395 P.2d 354; *People v. De Simone*, 28 Ill.2d 72, 190 N.E.2d 831.

■ We note that defendant does not complain of any error by the trial court in following the requirements of Crim. P. 11, which pertains to the acceptance by the court of a guilty plea by a defendant. In this connection, we examined the transcripts of proceedings when defendant entered his pleas of guilty. We have noted therefrom that the trial judge carefully and properly handled this phase of the proceedings. The trial judge fully complied with the requirements of *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418.

The court also followed the established statutory procedure by committing defendant for psychiatric observation and examination upon his initial plea of not guilty by reason of insanity. C.R.S. 1963, 39-8-2. The results of the commitment indicated that Bresnahan was sane, though quite emotionally disturbed; that his intelligence level was above average; and that his thinking processes were clear and logical. We note from defendant's testimony at the Rule 35(b) hearing (admittedly in 1968) and from his letters to his attorney and to his relatives pending disposition of the case in

the trial court, that defendant's thoughts and expression of the same were above average in quality and content for a person of his years. Hence, we find no reason for the trial court to have had any doubt as to defendant's competency and to have held a competency hearing on its own motion. Nor do we find that the trial court did not exercise caution in accepting defendant's guilty plea.

Next, we consider whether defendant's pleas of guilty were intelligently and voluntarily entered. In *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, the Supreme Court applied the following tests for determining if a plea is voluntarily and intelligently entered:

"... [T]he standard as to voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:

'[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).'" (at 1472)

. . .

"[T]he record before us also supports the conclusion that Brady's plea was intelligently made. He was advised by competent counsel, he was made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties; ..." (at 1473)

. . .

"[T]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A de-

fendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action...." (at 1473)

At the 35 (b) hearing, defendant's trial attorney testified that defendant was mad at him for pleading "not guilty by reason of insanity" because defendant didn't want a lengthy court proceeding. Defendant testified that although his grandparents thought that he should plead guilty "[I] stated to them that it was my life and to be confined in either place for a period of time that I should be able to make my own decision." He further testified that he told his attorney, the day of his change of pleas to guilty, that he wasn't coerced and that it was of his own free will. Furthermore, defendant had two months following entry of his guilty plea till sentencing to consider the consequences of his pleas. The record indicates no further hesitation or desire to withdraw his guilty pleas until this Rule 35 (b) proceeding. At all times, he was aided by counsel and was aware of the fact that he could have court appointed counsel if he so desired. He testified at the Rule 35 (b) hearing that he changed his plea to relieve his grandparents of legal expense, to avoid the possibility of life imprisonment in a mental institution, to avoid spending a period of six to eight months awaiting trial, and to avoid starting over again with a new attorney.

██ Applying the tests set forth in *Brady, supra*, to the above facts leads us to the conclusion that the trial court did not commit error in finding that the defendant did not show by a preponderance of the evidence that his pleas were not voluntarily and intelligently entered. The task of the trial court was to determine whether the pleas of guilty were voluntarily and intelligently entered, and that the guilty pleas were not the result of misrepresentation or impermissible persuasion. After careful study, as shown from the extensive and detailed

findings, the trial court ruled against the defendant on the issues presented. The evidence at the Rule 35(b) hearing and the record supports this result. Consequently, we cannot say that the record before us compels reversal as sought by the defendant.

## III.

Defendant also contends that his trial counsel was ineffective in three respects: (1) counsel was impaired because of a sense of duty to his employer, defendant's grandparents; (2) counsel failed to pursue the available insanity defense; and (3) counsel misinformed defendant as to sentencing.

█ Of itself, the fact that defendant's grandparents, also the parents of defendant's deceased mother, employed counsel for defendant is not patently indicative of a conflict of interests. This is especially the case when defendant with knowledge of the employment and the relationships involved consented to representation by his trial counsel, knowing that he could have court appointed counsel if he so desired. Defendant has the burden of showing that counsel, in these circumstances, was ineffective because of any real conflict of interests between defendant and his grandparents. *Witzel v. State,* 45 Wis.2d 295, 172 N.W.2d 692; *State v. Reppin,* 35 Wis. 2d 377, 151 N.W.2d 9. One who has such *knowledge* and *consents* to representation by such counsel cannot complain that counsel was ineffective without a showing of substantial prejudice to the defendant because of counsel's representation. *See Porter v. United States,* 298 F.2d 461; *Goodson v. Peyton,* 351 F.2d 905; *Kidder v. People,* 115 Colo. 72, 169 P.2d 181; *cf. Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. Defendant has not shown that there was any real conflict of interests nor that any prejudice resulted because of the employment of counsel by his grandparents. That the grandparents were not inherently adverse parties to defendant is clearly indicated by their concern for de-

fendant's welfare as expressed by voluntarily assuming the burden of hiring counsel for him, by their frequent trips to visit defendant on which occasions they supplied him with items which he desired, and by their letters to him during the pendency of proceedings. These matters are all reflected in the trial court record before us.

 With regard to counsel's advising the defendant regarding possible sentence consequences, we do not find that defendant's claim is meritorious. Counsel made it clear that he was advising and not guaranteeing. He indicated with probable accuracy the paths which defendant might follow and the probable consequences. Errors in judgment by counsel are not equivalent to incompetence. *Dolan v. People,* 168 Colo. 19, 449 P.2d 828; *see* American Bar Association Project On Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, § 3.2 and commentary, at 69-71 (Approved Draft 1968).

 That counsel did not pursue the defense of not guilty by reason of insanity does not seem to be open to argument. As stated before, defendant was unhappy with counsel for entering that very plea originally. Defendant testified that one of his reasons for avoiding the insanity plea was the possibility that he might be successful and spend his life in a mental institution, even though counsel had not foreclosed the possibility that defendant might be released in a few years. Admittedly, defendant's position was not an enviable one; however, the offenses were of a serious and tragic nature and the stakes were proportionate.

Having reviewed these contentions and all others raised by defendant, we conclude that they do not present a valid basis for reversal. The trial court made detailed and extensive findings based upon the testimony at the hearing, the exhibits, and the trial court's records. Its judgment denying the defendant's 35(b) motions is premised on these findings which are amply supported by the record before us. Accordingly, we

affirm the denial by the trial court of defendant's motions for relief under Crim. P. 35 (b).

Judgment affirmed.

MR. CHIEF JUSTICE PRINGLE not participating.
MR. JUSTICE ERICKSON dissenting.